UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SEAN M. COSBY,

                Plaintiff,            **REPORT AND RECOMMENDATION**

       -against-                        04 Civ. 5829 (CLB) (GAY)

CITY OF WHITE PLAINS, NEW YORK, through
the CITY OF WHITE PLAINS, NEW YORK
POLICE DEPARTMENT, P.O. JOHN KREINBIHL,
#027-1703, P.O. DEMCHUK, #157-1750, P.O.
"BOWLEG," P.O. RUTLEDGE, P.O. "JOHN"
WADE, DETECTIVE CAIATI, #D14, in their
individual and official capacities, and other Police
Officers, Sergeants, Detectives JOHN DOES 1-10,
in their individual and official capacities, and
through the LAW DEPARTMENT OF THE CITY
OF WHITE PLAINS, NEW YORK; DR. "JANE"
DOE, WESTCHESTER COUNTY HEALTH CARE
CORPORATION, THE COUNTY OF
WESTCHESTER, NEW YORK and TASER
INTERNATIONAL, INC.,

                Defendants.
------------------------------------------------------------------X

TO THE HONORABLE CHARLES L. BRIEANT, United States District Judge:

      Plaintiff Sean Cosby, proceeding *pro se*, commenced this action pursuant to 42 U.S.C. § 1983 and related New York state laws, wherein he alleges that the defendants violated his constitutional rights and his rights under New York state law during the course of three separate encounters between plaintiff and members of the White Plains Police Department. Presently before this Court are the City defendants'[1] and defendant

---

[1] The City of White Plains, its Police Department, its Law Department, Officer John Kreinbihl, Officer Demchuk, Officer "Bowleg," Officer Rutledge, Officer Wade, Detective Caiati and Officers John Does 1-10.

Taser International, Inc.'s ("Taser") motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").[2]  For the reasons that follow, I respectfully recommend that defendants' motions should be granted.

## I. PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff sets forth the following factual allegations in his complaint and opposition to defendants' motions:

A. <u>The July 30, 2003 Incident</u>

At approximately 11:30 p.m., plaintiff was standing in front of 135 South Lexington Avenue, eating Kennedy Fried Chicken and listening to a radio.  Plaintiff held the radio in his right hand and the chicken box underneath his arm.  A White Plains police squad car pulled up and Officer Kreinbihl exited the passenger side of the vehicle.  Kreinbihl approached plaintiff and asked him to turn the radio down; plaintiff complied.  Plaintiff asked Officer Kreinbihl what he wanted to discuss; Kreinbihl did not respond.  Plaintiff told Officer Kreinbihl that, if he was not under arrest, he had nothing to say and plaintiff walked away from the Officer.

At least five additional police cars arrived and Officer Kreinbihl, Officer "Bowleg" and other members of the White Plains Police Department ("WPPD") surrounded plaintiff.  Kreinbihl told plaintiff to put down his radio, and plaintiff complied.  Officer "Bowleg" rushed plaintiff from his right side and head-butted him in the left shoulder.

---

[2] **The County defendants**–The County of Westchester, Westchester County Health Care Corporation and defendant Dr. Jane Doe–have **not** moved for summary judgment.

Officer "Bowleg" repeatedly "mishandled" plaintiff, causing him to become dazed and fall over a garbage can.  At least five other Officers piled on top of plaintiff while he lay on the ground; all of the Officers began to beat plaintiff.  Plaintiff did not fight back or resist, nor did he attempt to flee.  While plaintiff was handcuffed and laying face down on his stomach, he heard a loud sound and felt that someone had shot him in the back; what he heard and felt was the discharge of a Taser gun applied to his lower left back.  Plaintiff lay on the ground as the officers continued to shock him with the taser.

      B.  <u>The October 1, 2003 Incident and Related Events</u>

On October 1, 2003, plaintiff was arrested by members of the WPPD, including defendants Caiati, Demchuk, "Bowleg" and Rutledge, in front of the Star Diner on East Post Road.  The arrest was made pursuant to a warrant issued after an incident which occurred on November 11, 2002.  During the course of the arrest, defendants applied a Taser gun to the back and side of plaintiff's upper right forearm and to his upper and lower right back.  One or more of the officers also beat plaintiff severely.

The next day (October 2), plaintiff visited the White Plains police department with the intent to file a complaint regarding his alleged mistreatment on July 30 and October 1.  Defendant Wade was the desk officer with whom plaintiff sought to lodge his complaint;  Wade refused to take plaintiff's complaint.

By letter dated October 13, 2003 (and stamped "received" by the WPPD on October 14, 2003), plaintiff's former counsel requested to see the original warrant and supporting papers.  On October 21, 2003, the WPPD filed a new complaint (dated October 17, 2003) alleging that plaintiff resisted arrest on October 1, 2003.

      C.  <u>The October 16, 2003 Incident and Related Events</u>

On October 16, 2003, plaintiff was a passenger in a vehicle driven by Neil Williams.  Members of the WPPD, including Detective Caiati, stopped the vehicle on the grounds that it had a broken taillight.  The WPPD conducted an unauthorized search of the vehicle wherein they found a hand-rolled cigar/cigarette which allegedly contained a mixture of marijuana and PCP.  Plaintiff was arrested; before the WPPD transported plaintiff to police headquarters, they searched him three times and found nothing.  Plaintiff was charged with third, fifth and seventh degree criminal possession of a controlled substance.

The WPPD transported plaintiff and Mr. Williams to police headquarters in separate cars and, upon arrival, the WPPD handcuffed both of them to a pole.  Plaintiff remained as such for six or seven hours, during which time the WPPD forced him to remove his shoes and socks.  As a result of standing barefoot on the floor for over thirteen hours, plaintiff suffered a bacterial infection in his left foot.  On October 17, 2003, the WPPD transported plaintiff to the Westchester County jail.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FRCP 56(c).  Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists.  See LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995).  If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is a genuine issue for trial."

FRCP 56(e).  Where a plaintiff fails to establish an essential element of her claim, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotations and citations omitted).

When deciding a summary judgment motion, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).  The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party.  See Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994).  Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

Further, since plaintiff is proceeding *pro se*, the Court must judge his submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (The Court must read a pro se party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest."). This liberal standard, however, "is not without limits, and all normal rules of pleading are not absolutely suspended." Stinson v. Sheriff's Dep't of Sullivan County, 499 F. Supp. 259, 262 (S.D.N.Y. 1980).  In other words, plaintiff's pro se status does not relieve him of the usual requirements of summary judgment.  See Lee v. Coughlin, 902 F. Supp.

424, 429 (S.D.N.Y. 1995) (citation omitted) (a "pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment"); Kadosh v. TRW, Inc., No. 91 Civ. 5080 (PKL), 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("The work product of pro se litigants should be generously and liberally construed, but [the pro se's] failure to allege either specific facts or particular laws that have been violated renders his attempt to oppose defendants' motion ineffectual.").

## III.  NEW YORK STATE CONSTITUTIONAL CLAIMS

Plaintiff seeks relief for violations of the search and seizure and right to petition the government for redress of grievances clauses of the state constitution.  Defendants did not address said claims in their summary judgment motion.  Nonetheless, the Court must *sua sponte* dismiss said claims "because no private right of action exists for violations of the New York State Constitution where a Plaintiff has alternative damage remedies available" under § 1983.  See Flores v. City of Mount Vernon, 41 F. Supp.2d 439, 447 (S.D.N.Y. 1999).  Here, plaintiff has stated viable claims pursuant to § 1983, alleging violations of his Fourth Amendment right to be free from unreasonable searches and seizures and his First Amendment right to petition the government for redress of grievances.  Accordingly, I respectfully recommend that plaintiff's claims for violations of Article I, §§ 9 and 12 of the New York State Constitution should be dismissed.

## IV.  WPPD AND CITY OF WHITE PLAINS' LAW DEPARTMENT

Plaintiff has sued the City of White Plains and its Police Department and Law Department.  Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, New York

6

law governs the capacity of administrative departments to sue or to be sued. "Under New York law, departments such as the [City of White Plains] Police Department, which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." Fanelli v. Town of Harrison, 46 F. Supp.2d 254, 257 (S.D.N.Y. 1999). Here, the WPPD and the Law Department of the City of White Plains are merely administrative arms of the City of White Plains; the City is the real party in interest. Accordingly, I respectfully recommend that the claims against the WPPD and the Law Department of the City of White Plains should be dismissed.

## V. JOHN DOES AND OFFICER "BOWLEG"

Plaintiff asserts claims against John Does 1-10 (unidentified members of the WPPD) and a WPPD Officer identified only by the nickname "Bowleg." Pursuant to general principles of tort law, a "tort victim who cannot identify the tortfeasor cannot bring suit." See Valentin v. Dinkins, 121 F.3d 72, 75 (2d Cir. 1996). This same principle governs damages awarded under § 1983. See Carey v. Piphus, 435 U.S. 247, 257 (1978). Here, plaintiff had ample time to conduct discovery to identify the police officers responsible for his alleged injuries; discovery is now complete and plaintiff fails to identify any additional defendants. Nor does plaintiff assert that additional discovery or trial will reveal these defendants' identities. Accordingly, I respectfully recommend that the claims against John Does 1-10 and Officer "Bowleg" should be dismissed.

## VI. MUNICIPAL LIABILITY AND OFFICIAL CAPACITY CLAIMS

Plaintiff seeks to hold the City of White Plains liable for the alleged violations of

his constitutional rights, on the grounds that the City (1) was deliberately indifferent to plaintiff's contracting a serious foot infection when he was forced to stand and walk barefoot in police headquarters, (2) did not permit plaintiff to file his properly executed Notices of Claim pertaining to the October 1 and October 16 arrests and (3) failed to train and supervise its police officers regarding their use of potentially deadly force when effectuating arrests.  A municipality may be held liable pursuant to 28 U.S.C. § 1983 where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Municipal liability may be premised on the municipality's failure to train its employees "where that . . . failure to train reflects deliberate indifference to . . . constitutional rights."  City of Canton v. Harris, 489 U.S. 378, 392 (1989).  In order to prove that the municipality's failure to train amounted to "deliberate indifference," plaintiff must demonstrate three factors: (1) that "a policymaker knows 'to a moral certainty' that [its] employees will confront a given situation"; (2) that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that "the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights."  Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992) (citation omitted).

Plaintiff's conclusory assertions notwithstanding, the record is devoid of evidence

necessary to create an issue of fact that a municipal policy or custom led to the alleged violations of plaintiffs' constitutional rights. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (no municipal liability where the "record [was] devoid of any evidence from which a reasonable juror could have inferred the existence of a municipal policy" that caused the violation of a constitutional right). Further, plaintiff has submitted no evidence that the City of White Plains failed to train or supervise the officers involved in the incidents, or in any way exhibited "deliberate indifference" to the rights of those with whom the officers would come into contact. Plaintiff's "conclusory allegations claiming that a lack of training contributed to plaintiff's rights being violated is not enough to state a valid § 1983 claim." Scott v. Sinagra, 167 F. Supp.2d 509, 514 (N.D.N.Y. 2001) (citing Butler v. Castro, 896 F.2d 698, 700 (2d Cir. 1990)). Accordingly, I respectfully recommend that all constitutional claims against the City of White Plains should be dismissed.

As to plaintiffs' claims against the individual defendants in their official capacities, "[s]uits against government agents in their official capacities do not differ in substance from suits against municipalities, and therefore the same limitations on liability apply." Hamilton v. New Haven, 213 F. Supp.2d 125, 132 (D. Conn. 2002). As stated above, plaintiffs have offered no evidence that the individual defendants acted pursuant to a municipal policy or custom. Accordingly, I respectfully recommend that plaintiff's constitutional claims against the individual officers in their official capacities should also be dismissed.

**VII.  INDIVIDUAL LIABILITY UNDER 42 U.S.C. § 1983**

In order to establish personal liability under 42 U.S.C. §1983, plaintiff must prove, <u>inter alia</u>, that the defendant caused the deprivation of plaintiff's rights.  See <u>Taylor v. Brentwood Union Free Sch. Dist.</u>, 143 F.3d 679, 685 (2d Cir. 1998) (citation omitted).  The Second Circuit has delineated several ways in which a defendant may be personally involved in a constitutional deprivation so as to be liable under §1983:  (1) "[t]he defendant may have directly participated in the infraction"; (2) "[a] supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong"; (3) "[a] supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices continue"; (4) "a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event."  <u>Williams v. Smith</u>, 781 F.2d 319, 323-24 (2d Cir. 1986).

A. <u>Excessive Force</u>

Plaintiff alleges that defendants Kreinbihl, Caiati, Demchuck and Rutledge used excessive force to effectuate plaintiff's arrests on July 30 and October 1 and failed to intercede to prevent the use of excessive force by other officers in the course of said arrests.  A police officer's use of force violates the Fourth Amendment "if it is objectively unreasonable in light of the facts and circumstances confronting [the officer], without regard to [his or her] underlying intent or motivation."  <u>Maxwell v. City of New York</u>, 380 F.3d 106, 108 (2d Cir. 2004) (quotation and citation omitted).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's

10

Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (citations and additional internal quotation marks omitted). Further, a police officer who does not personally use excessive force but observes other officers using excessive force, or has reason to know that other officers will be using excessive force, may be held liable for failing to intercede to prevent the constitutional violation committed by others. See Provost v. City of Newburgh, 262 F.3d 146, 168 (2d Cir. 2001); Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001).

Here, plaintiff proffers no evidence which would establish that defendants Kreinbihl, Caiati, Demchuk and Rutledge personally used excessive force against plaintiff during the incidents in question. Moreover, even assuming *arguendo* that plaintiff was subjected to excessive force during the course of the arrests in question, there is no evidence that either Kreinbihl, Caiati, Demchuk or Rutledge actually observed this use of force and had "a realistic opportunity to intervene to prevent" it. See Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). Accordingly, I conclude, and respectfully recommend, that plaintiff's excessive force claims must be dismissed.

 B. Assault and Battery

Plaintiff's state law claims for assault and battery essentially duplicate his constitutional excessive force claims. An assault is "an intentional placing of another person in fear of imminent harmful or offensive contact" and a battery is "an intentional wrongful physical contact with another person without consent." See United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993). Assault and

11

battery claims under New York law and Fourth Amendment excessive force claims are evaluated pursuant to the same standard. See Posr v. Doherty, 944 F.2d 91, 94-95 (2d Cir. 1991). Under federal or state law, a plaintiff alleging excessive force must demonstrate that "the amount of force used was objectively unreasonable" when considered from "the perspective of the officer at the time of the arrest." See Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996). As previously discussed, plaintiff has asserted no facts sufficient to implicate any of the named individual police officers in the alleged incidents of assault and battery; because no individual officer may be held liable, plaintiff's vicarious liability claims against the City must also fail. Accordingly, I conclude, and respectfully recommend, that plaintiff's claims for assault and battery should be dismissed.

### C. Due Process

Plaintiff alleges that, on October 18, 2003, defendant Demchuk violated his due process rights because plaintiff developed a foot infection as a result of being forced to walk barefoot on the floor of police headquarters. However, plaintiff proffers no evidence that Demchuk was involved with the October 18 incident; more specifically, plaintiff does not allege that Demchuk was the officer who ordered plaintiff to remove his shoes and socks. Plaintiff, then, fails to establish Demchuk's personal liability for the alleged due process violation. Accordingly, I respectfully recommend that plaintiff's due process claim arising from the October 16, 2003 arrest must be dismissed.

## VIII.  FALSE ARREST

Plaintiff alleges that defendants subjected him to a false arrest on October 1,

2003.  On that date, plaintiff was arrested pursuant to a warrant which issued in November 2002; he was charged with possession of narcotics.  See Exhibits Listing submitted by City defendants in support of their instant motion, Exh. F, at 11.  On March 31, 2005, plaintiff pled guilty to twenty counts of criminal possession of narcotics, including the charges arising from the October 1, 2003 arrest.  See id. at 7-12.  The Second Circuit has held that a plaintiff cannot establish a § 1983 false arrest claim if he pleads guilty to the offense for which he was arrested.  See Maietta v. Artuz, 84 F.3d 100, 103 n.1 (2d Cir. 1996); see also Flemming v. City of New York, No. 02 Civ. 4113, 2006 WL 1006263, at *3 (S.D.N.Y. Apr. 18, 2006).  Accordingly, I respectfully recommend that plaintiff's false arrest claim should be dismissed.

## IX. FIRST AMENDMENT DENIAL OF ACCESS TO COURTS

Plaintiff alleges that, on October 2, 2003, defendant Wade impeded his First Amendment right of access to the courts by refusing to lodge plaintiff's complaint regarding his alleged mistreatment on July 30 and October 1.  Pursuant to the First and Fourteenth Amendments, plaintiff has a right to seek redress for grievances from the government in the judicial system.  See Friedl v. City of New York, 210 F.3d 79, 86 (2d Cir. 2000).  "The constitutional right of access is violated where government officials obstruct legitimate efforts to seek judicial redress."  Whalen v. County of Fulton, 126 F.3d 400, 406 (2d Cir. 1997).  Clearly, the instant lawsuit belies plaintiff's claim that Wade in any way impeded, delayed or otherwise interfered with plaintiff's right of access to the courts.  Accordingly, I conclude, and respectfully recommend, that plaintiff's First Amendment right of access claim should be dismissed.

## X. FIRST AMENDMENT RETALIATION

Plaintiff also alleges that defendants Caiati, Demchuk, Rutledge and Wade arrested him on October 16 and subsequently filed the resisting arrest charge in retaliation for plaintiff's October 2nd attempt to lodge a complaint with Wade and plaintiff's attorney's October 3 request for copies of the outstanding arrest warrant. In order to succeed on his retaliation claim, plaintiff must demonstrate: (1) that the speech or conduct at issue is protected under the First Amendment; (2) that the defendants took adverse action against him; (3) that there was a causal connection between plaintiff's protected conduct and the adverse action, and (4) that the defendants' action chilled the exercise of plaintiff's First Amendment right. See Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) (first three elements); Curley, 268 F.3d at 73 (requirement that the exercise of First Amendment right is "actually chilled").

Here, although plaintiff's right of access to the courts is clearly protected, plaintiff's claim fails for several reasons. In the first instance, plaintiff proffers no evidence that either Demchuk, Rutledge or Wade took any adverse action against him. Further, while Caiati filed the resisting arrest charge, plaintiff proffers no evidence that Caiati was aware of plaintiff's protected conduct. Thus, plaintiff fails to establish the necessary causal connection. Finally, plaintiff has continued to pursue redress in federal court. There is no evidence that his right of access to the courts has been chilled. Accordingly, I conclude, and respectfully recommend, that plaintiff's First Amendment retaliation claim should be dismissed.

## XI. NEGLIGENCE AND STRICT LIABILITY

Plaintiff claims that defendant Taser was negligent in the design, testing, inspection, manufacture, distribution, labeling, sale and promotion of its taser guns. Plaintiff also alleges that Taser is strictly liable because its failure to adequately test the tasers resulted in a defect that was a substantial factor in bringing about plaintiff's injuries. In order to succeed on his negligence claim, plaintiff must demonstrate four elements: (1) defendant owed plaintiff a duty recognized by law; (2) defendant breached that duty; (3) a reasonably close causal connection exists between defendant's conduct and plaintiff's injuries; and (4) plaintiff suffered loss or damage as a result of defendant's breach. See McCarthy v. Olin Corp., 119 F.3d 148, 156 (2d Cir. 1997). In order to establish a *prima facie* claim of strict products liability, plaintiff must show that Taser placed a defective product on the market and that the defect was a proximate cause of plaintiff's injury. See Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 108, 450 N.E.2d 204, 463 N.Y.S.2d 398 (1983).

Defendant Taser argues that it is entitled to summary judgment on plaintiff's claims because Taser owed no duty to plaintiff and Taser's product was neither defective nor inherently dangerous. Plaintiff fails to address Taser's arguments in his responsive papers; in fact, plaintiff's responsive papers make no mention of the claims against Taser. More to the point, a thorough review of the record reveals a complete lack of evidence as to any of the elements of plaintiff's negligence and strict liability claims. Accordingly, I conclude, and respectfully recommend, that plaintiff's negligence and strict liability claims against defendant Taser must be dismissed.

## XII.  CONCLUSION

For all of the foregoing reasons, I conclude, and respectfully recommend that the City defendants' and Taser's **motions for summary judgment should be granted** and all claims against The City of White Plains, its Police Department, its Law Department, P.O. Kreinbihl, P.O. Demchuk, P.O. "Bowleg," P.O. Wade, Detective Caiati, John Does 1-10 and Taser International, Inc. **should be dismissed**.

### XIII.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(B), as amended, and Rule 72(b), Fed. R. Civ. P., the parties shall have ten (10) days from receipt of this Report to serve and file written objections to this Report and Recommendation.  If copies of this Report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections.  See Fed. R. Civ. P. 6(e).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Charles L. Brieant at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See Small v. Secretary of H.H.S., 892 F.2d 5, 16 (2d Cir. 1989).

Requests for extensions of time to file objections must be made to the Honorable Charles L. Brieant and not to the undersigned.

Dated: February 9, 2007
White Plains, New York

Respectfully Submitted,

_____
GEORGE A. YANTHIS, U.S.M.J.

17